NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| N.V.E., INC., | |
|         Plaintiff, | Hon. Garrett E. Brown, Jr. |
| v. | Civil No. 07-4283 |
| EDWARD DAY, JEFF SANTIAGO, GUY SANABRIA, TIFFANY KING, LISA CALDERONE, DONALD WAGNER, BRANDY COPLEY, AND TIM CIDER, | **MEMORANDUM OPINION** |
| -and- | |
| JOHN DOES 1-20, JANE DOES 1-20, and ABC CORPORATIONS 1-20, | |
|         Defendants. | |

Charles P. Guarino
NICOLL DAVIS & SPINELLA LLP
95 Route 17 South, Suite 203
Paramus, New Jersey 07652

**BROWN, Chief Judge:**

      This matter comes before the Court on Plaintiff N.V.E., Inc.'s ("NVE") motion for default judgment (Doc. Nos. 23 & 24) as against Defendants Lisa Calderone, Brandy Copley, and Edward Day ("Defaulting Defendants"). For the following reasons, Plaintiff's motion will be granted with respect to liability, and granted in part with respect to damages.

*Background*

NVE is a retailer, manufacturer, and distributor of dietary and nutritional supplements. NVE has marketed the nutritional supplements STACKER 2 and STACKER 3 under distinctive marks since August 1996 and September 1997, respectively. In 1998, NVE obtained registered trademarks for STACKER 2 (U.S. Registration No. 2,190,936) and STACKER 3 (U.S. Registration No. 2,205,679). These trademarks remain in full force and effect under 15 U.S.C. § 1065, and NVE has continued to market the nutritional supplements with packaging and promotional materials featuring the trademarks. (*See* Compl. at ¶¶ 10–18 and Exs. A, B.)

NVE alleges that Defaulting Defendants, as well as the other identified and unidentified third parties, used iOffer.com, an online marketplace, to sell products that bore identical or deceptively similar marks to STACKER 2 and STACKER 3. NVE submits that Defaulting Defendants have sold the following varieties of infringing products: (a) counterfeit examples of STACKER 2 and STACKER 3 that contain ephedra, a substance banned by the U.S. Food & Drug Administration on April 12, 2004; (b) knock-off products that use the STACKER 2 and STACKER 3 Trade Dress without any notice of authorization on its label or in its product description on iOffer.com; and/or (c) expired authentic STACKER 2 and STACKER 3 products, which were sold legally prior to the ban of ephedra, the sale of which is now prohibited by federal law. (Compl. at ¶¶ 20–25.)

On September 7, 2007, NVE filed a six-count Complaint raising claims of trademark infringement, false designation of origin, trademark dilution, unfair competition, injury to business reputation, and trafficking in counterfeit marks. Plaintiff's claims arise under sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), as well as state statutory and

common law.

Defaulting Defendants were properly served with the Complaint but failed to file a response within the time allowed under Fed. R. Civ. P. 12(a)(1)(A). On June 9, 2008, the Clerk of the Court entered default against these three Defendants pursuant to Fed. R. Civ. P. 55(a).[1] NVE now moves for default judgment against Defaulting Defendants.

*Analysis*

Plaintiff has filed claims alleging violations of federal law pursuant to the Lanham Act, 15 U.S.C. §§ 1051–1127. This Court exercises jurisdiction over Plaintiff's Lanham Act claims pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367 because (1) this Court has subject-matter jurisdiction over the Lanham Act claims, (2) the state law claims and the federal claims derive from a "common nucleus of operative fact," and (3) the claims are such that they would normally "be expected to be tried in one judicial proceeding." *MCI Telecomms. Corp v. Teleconcepts, Inc.*, 71 F.3d 1086, 1102 (3d Cir. 1995).

A court may grant default judgment pursuant to Federal Rule of Civil Procedure 55(b)(2). On a motion for default judgment, the Court must accept all allegations in the Complaint as true other than those regarding the amount of damages. *Comdyne I, Inc.* v. *Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). A plaintiff's claim for damages must be granted where the

---

[1] On March 10, 2009, the Clerk of the Court issued a Notice of Call for Dismissal pursuant to Local Rule 41.1. On March 12, 2009, Plaintiff filed a motion for default judgment (Doc. No. 23), and on March 13, 2009, Plaintiff filed an amended motion for default judgment (Doc. No. 24), along with an affidavit (Doc. No. 25) in opposition to the call for dismissal. This Court finds that Plaintiff has demonstrated good cause for its delay in prosecuting its claims.

plaintiff provides an affidavit showing the amount of damages that are due. Fed. R. Civ. P. 55(b)(1). The court may, however, conduct a hearing to determine the proper amount of damages due to the plaintiff. Fed. R. Civ. P. 55(b)(2).

## I.     Liability

Plaintiff properly served Defaulting Defendants with process and notice of the instant motion. Defaulting Defendants have not responded. Accepting the allegations of the Complaint as true and admitted by Defaulting Defendants, as this Court must, NVE's allegations establish violations of sections 32 and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a). Plaintiff has established that it has valid and legally protectable marks that it owns, and, having viewed the counterfeit marks (*see generally* Guarino Certif., Ex. C), this Court is satisfied that Defaulting Defendants' use of the marks is likely to cause consumer confusion. *See Platypus Wear, Inc. v. Bad Boy Club, Inc.*, No. 08-2662, 2009 WL 2147843, at *2 (D.N.J. July 15, 2009) (citing *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 210 (3d Cir. 2000)). By virtue of these Lanham Act violations, NVE has also established its common law and state law claims for unfair competition. *Am. Tel. & Tel. Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421, 1433 (3d Cir. 1994); *Pharmacia Corp. v. Alcon Labs., Inc.*, 201 F. Supp. 2d 335, 386 (D.N.J. 2002) (citing *Apollo Distrib. Co. v. Jerry Kurtz Carpet Co.*, 696 F. Supp. 140, 143 (D.N.J. 1988)). Likewise, this conduct appears to establish NVE's state law claim of trafficking in counterfeit marks. *See* N.J.S.A. § 56:3-13.16. However, in the absence of specific allegations regarding the distinctiveness, the degree of recognition, and the geographic scope of its marks, this Court cannot find that NVE has established its state law claim for trademark dilution under N.J.S.A. § 56:3-13.20. *See Platypus Wear*, 2009 WL 2147843, at *3–4 (declining

to enter default judgment on plaintiff's trademark dilution claim where plaintiff's complaint failed to allege sufficient facts that its trademarks were famous).

Defaulting Defendants have presented no meritorious defenses, and NVE will be prejudiced in the absence of default judgment. *See Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 538 (D.N.J. 2008) (applying factors enumerated in *Emcasco Ins. Co. v. Sambrick,* 834 F.2d 71, 73 (3d Cir. 1987)). Accordingly, this Court will grant default judgment against Defaulting Defendants on Plaintiff's Lanham Act claims, state law claims for trafficking in counterfeit marks and unfair competition, and common law claim for unfair competition (Counts I–III, V, and VI of the Complaint).

## II.     Statutory Damages

NVE seeks statutory damages for willful trademark infringement under the Lanham Act. The Lanham Act provides for the recovery of statutory damages if it is impossible to calculate lost profits. *See* 15 U.S.C. § 1117(c). Because Defaulting Defendants failed to answer the Complaint, NVE is unable to calculate its lost profits. The Lanham Act authorizes statutory damages between $500 and $100,000 per counterfeit mark, and up to $1 million per counterfeit mark if the offending party's unauthorized use of the trademark was willful. 15 U.S.C. § 1117(c) (1998).[2] NVE requests the maximum statutory award for each of the two registered trademarks that Defaulting Defendants have counterfeited, for a total of $2 million.

The Third Circuit has established that willfulness under the Lanham Act "consists of

---

[2]Effective October 13, 2008, Congress amended the Lanham Act to double the statutory damages range to $1,000–$200,000 per counterfeit mark, and up to $2 million per counterfeit mark where the infringement is willful. NVE does not contend that the amended statutory damages provision applies to this case, which commenced in 2007.

more than the accidental encroachment of another's rights. It involves an intent to infringe or a deliberate disregard of a mark holder's rights." *SecuraComm Consulting Inc. v. Securacom Inc.*, 166 F.3d 182, 187 (3d Cir. 1999), *superseded by statute on other grounds as recognized by Banjo Buddies, Inc. v. Renosky*, 399 F.3d 168, 171 (3d Cir.2005). Willful infringement "involv[es] an aura of indifference to plaintiff's [trademark] rights or a deliberate[] and unnecessar[y] duplicating [of a] plaintiff's mark . . . in a way that was calculated to appropriate or otherwise benefit from the good will the plaintiff had nurtured." *SecuraComm Consulting Inc.*, 166 F.3d at 187 (citations and internal quotation marks omitted).

In support of their claim that Defaulting Defendants acted willfully, NVE has submitted copies of the product listings, posted by Defaulting Defendants on the Internet, that infringe the STACKER 2 and STACKER 3 trademarks. (Guarino Certif., Ex. C.) After careful consideration of the evidence documenting Defaulting Defendants repeated, unauthorized use of Plaintiff's trademarks, and accepting Plaintiff's allegations as true, this Court finds that Defaulting Defendants acted willfully because they deliberately deceived consumers and traded upon NVE's good will by selling counterfeit versions of NVE's products bearing NVE's trademarks. *See Chanel*, 558 F. Supp. 2d at 538 ("The fact that Defendant sold goods using marks that were identical to such strong and established marks conclusively demonstrates his desire to and purpose to trade upon Chanel's goodwill."); *cf. Microsoft Corp. v. CMOS Techs.*, 872 F. Supp. 1329, 1335 (D.N.J. 1994) ("It would be difficult to imagine a clearer case of consumer confusion than the instant case in which the defendants, acting in direct competition with the plaintiff, sold counterfeit products on which plaintiff's registered marks appear in their entirety."). Therefore, this Court will award enhanced statutory damages under the Lanham Act.

However, the existence of willfulness does not automatically entitle NVE to the maximum damages available under the Lanham Act.  Indeed, the Lanham Act authorizes "not more than $1,000,000 per counterfeit mark . . . , as the court considers just."  15 U.S.C. § 1117(c)(2) (1998).  A number of courts in this Circuit have construed this language to vest the district court with wide discretion in awarding statutory damages for willful trademark infringement, to be guided by such considerations as "(1) the expenses saved and the profits reaped; (2) the revenues lost by the plaintiff; (3) the value of the [trademark]; (4) the deterrent effect on others besides the defendant; (5) whether the defendant's conduct was innocent or willful; (6) whether [the] defendant has cooperated in providing particular records from which to assess the value of the infringing material produced; and (7) the potential for discouraging the defendant."  *Platypus Wear*, 2009 WL 2147843, at *6–7 (citation omitted) (adopting factors from copyright law); *see also Louis Vuitton Malletier & Oakley, Inc. v. Veit*, 211 F. Supp. 2d 567, 583–84 (E.D. Pa. 2002) (weighing similar factors).  In this case, there is only limited evidence of revenues made by one of the Defaulting Defendants, Lisa Calderone; on the basis of NVE's exhibit, this Court understands that Calderone sold approximately $7,000 in products infringing upon NVE's STACKER 2 and STACKER 3 trademarks over the Internet.  (*See* Guarino Certif., Ex. C at 29–32.)  Otherwise, Plaintiff has not submitted an estimate of profits made by Defaulting Defendants, revenues it lost from Defaulting Defendants' willful infringement, or the overall value of its trademarks.

In similar circumstances—willful trademark infringement, limited documentation of damages—the court in *Platypus Wear* awarded $10,000 per counterfeit mark, reflecting the tenfold increase in statutory damages the Lanham Act authorizes for willful violations

7

($2 million vs. $200,000 per counterfeit mark under the current damages provision), applied to the minimum statutory damages available ($1,000 under the current damages provision). 2009 WL 2147843, at *7. In other words, for what that court deemed the least culpable willful conduct, that court approximated what the minimum willful damages would be on the basis of the Lanham Act's multiplier for willful damages. *See id.* However, this case involves two aggravating factors not present in *Platypus Wear*: continued distribution of supplements containing banned substances, and mass-distribution of counterfeit marks on the Internet.

Beginning with the former, this Court has no doubt that Defaulting Defendants benefitted by selling counterfeit STACKER 2 and STACKER 3 supplements that contained ephedra on the black market when NVE was prohibited by federal law from doing the same. Consumers wishing to purchase full-strength variants of NVE's supplements would naturally choose the counterfeit products over their legitimate counterparts. Not only does NVE suffer from Defaulting Defendants' unfair competition, but the public at large suffers from Defaulting Defendants' peddling of unsafe substances to unwitting consumers.

With regard to Defaulting Defendants' sale of the counterfeit products on the Internet, a number of courts have recognized that the proliferation of counterfeit marks on the Internet to a nearly limitless audience of consumers significantly increases the likelihood of consumer confusion. *See, e.g.*, *Louis Vuitton*, 211 F. Supp. 2d at 584 (expressing concern for the saturation of counterfeit marks among the more than 143 million Internet consumers); *Rolex Watch U.S.A., Inc. v. Jones*, No. 01-3991, 2002 WL 596354, at *5 (S.D.N.Y. Apr. 17, 2002) (Report and Recommendation) (acknowledging difficulty of quantifying losses where counterfeited marks were sold on the Internet). Consequently, courts encountering the pervasive effects of Internet

trafficking in counterfeit marks have ordered larger statutory damages awards. *E.g.*, *Chanel*, 558 F. Supp. 2d at 538 (awarding $2.239 million on the basis of defendant's willful infringement of more than 10 Chanel trademarks via defendant's nine web sites, guided by plaintiff's estimates of defendant's profits); *Louis Vuitton*, 211 F. Supp. 2d at 584–85 (awarding $1.5 million for willful infringement of eight Louis Vuitton and Oakley trademarks); *Rolex Watch U.S.A.*, 2002 WL 596354, at *6 (recommending $600,000 in statutory damages for willful infringement and distribution of more than 10 Rolex and Polo Ralph Lauren trademarks on the Internet). This Court is guided by the sound judgment of these courts.

After careful reflection of the unique circumstances of this case, this Court will award statutory damages in the total amount of $250,000. Considering the limited record of NVE's monetary and reputational losses, this Court finds that this amount will adequately compensate NVE and deter Defaulting Defendants, as well as others, from engaging in such conduct.

**III.    Attorneys' Fees and Prejudgment Interest**

NVE requests attorneys' fees and prejudgment interest pursuant to the Lanham Act. The Lanham Act expressly permits an award of attorneys' fees to a prevailing party in "exceptional cases." 15 U.S.C. § 1117; *see also Chanel*, 558 F. Supp. 2d at 539. Meanwhile, although the damages provisions of the Lanham Act appear silent on the matter, most courts have also permitted an award of prejudgment interest in exceptional cases. *Am. Honda Motor Co. v. Two Wheel Corp.*, 918 F.2d 1060, 1064 (2d. Cir. 1990); *see also Sands, Taylor & Wood Co v. Quaker Oats Co.*, 978 F.2d 947, 963 (7th Cir. 1992) (remanding for recalculation, but permitting an award of prejudgment interest under the Lanham Act). NVE, as the prevailing party, bears the burden of proving that this case qualifies as an exceptional case by clear and convincing

evidence.  *See, e.g.*, *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1390 (5th Cir. 1996); *Reed Pub'g (Nederland) B.V. v. Execulink, Inc.*, No. 98-1049, 1998 WL 812246, at *3 (D.N.J. Nov. 17, 1998).  Willful and deliberate trademark infringement constitutes an exceptional case for purposes of attorneys' fees and prejudgment interest.  *See, e.g.*, *Securacomm Consulting, Inc. v. Securacom, Inc.*, 224 F.3d 273, 280–82 (3d Cir. 2000) (attorneys' fees); *Chanel*, 558 F. Supp. 2d at 539 (same); *Callaway Golf Co. v. Slazenger*, 384 F. Supp. 2d 735, 747–49 (D. Del. 2005) (applying "exceptional case" standard to applications for both attorneys' fees and prejudgment interest under the Lanham Act).

      This Court is satisfied that NVE has presented clear and convincing evidence that Defaulting Defendants willfully infringed NVE's trademarks.  As noted above, NVE has submitted copies of Defaulting Defendants' Internet product listings that infringe the STACKER 2 and STACKER 3 trademarks.  (Guarino Certif., Ex. C.)  This evidence persuades the Court that Defaulting Defendants acted willfully, because they deliberately attempted to deceive consumers so that they could profit from selling counterfeit versions of NVE's products.  Thus, this Court will award reasonable attorneys' fees and costs, as well as prejudgment interest to NVE.

      With regard to prejudgment interest, because this Court's jurisdiction arises from NVE's federal Lanham Act claims, this Court has discretion to set the applicable interest rate.  *Skretvedt v. E.I. DuPont De Nemours,* 372 F.3d 193, 208 (3d Cir. 2004).  In exercising this discretion, the Third Circuit has recommended that this Court be guided by the interest rate provided by 28 U.S.C. § 1961(a).  *Sun Ship, Inc. v. Matson Navigation Co.*, 785 F.2d 59, 63 (3d Cir. 1986).  Accordingly, this Court will set the interest rate as the rate applicable to a 52-week U.S. Treasury

Bill as of the last auction prior to the date of this Order; for the week ending July 31, 2009, the applicable annual interest rate is 0.49%. *See* Federal Reserve, Select Interest Rates, http://www.federalreserve.gov/releases/h15/current/ (last visited Aug. 12, 2009). Because the Complaint does not specify when the harm occurred, this Court has no choice but to award prejudgment interest compiled from the date of the Complaint, September 7, 2007, through the date of this Order, August 13, 2009, a period of 23 months. Applying this interest rate to this period of time results in $2,347.92 in prejudgment interest, which this Court will award as part of this Order.

With regard to attorneys' fees, however, this Court cannot accept NVE's conclusory assertion that an award of $5,000 would reasonably compensate it for its attorneys' fees. (*See* Guarino Certif. ¶ 8.) The Court will require counsel for NVE to submit descriptive time entries from its billing records for the Court's *in camera* review within 30 days of receipt of this Opinion and Order.

### IV.    Injunctive Relief

Finally, NVE requests that this Court permanently enjoin Defaulting Defendants from committing future acts of infringement against their trademarks. The Lanham Act empowers this Court to grant injunctive and other equitable relief to prevent further violations of NVE's trademark rights. 15 U.S.C § 1116(a). The Supreme Court held in *eBay, Inc. v. MercExchange, LLC* that "well-established principles of equity" dictate that any plaintiff seeking a permanent injunction must show "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is

warranted; and (4) that the public interest would not be disserved by a permanent injunction." 547 U.S. 388, 391 (2006) (citations omitted). Courts in this District have applied similar factors in considering permanent injunctions in trademark cases. For example, in *Chanel, Inc. v. Gordashevsky*, the court stated:

> Generally, to obtain a permanent injunction, a plaintiff must show that (1) the Court's exercise of equity jurisdiction is proper, (2) the Plaintiff succeeded on the merits, and (3) the balance of equities tips in favor of injunctive relief. The first factor contains three sub-parts which require the plaintiff to show (1) plaintiff has no adequate legal remedy; (2) the threatened injury is real, not imagined; and (3) no equitable defenses exist.

558 F. Supp. 2d at 539 (citations omitted); *see also Microsoft Corp. v. Gonzales*, No. 06-4331, 2007 WL 2066363, at *7 (D.N.J. July 13, 2007) (applying same standard in copyright and trademark infringement case).

     Plaintiff has shown all of these elements. Equity jurisdiction is proper under the Lanham Act, and NVE has succeeded on the merits. NVE has suffered irreparable injury by virtue of Defaulting Defendants' repeated acts of trademark infringement, which were broadcast to a virtually limitless consumer audience via the Internet. These acts have caused a strong likelihood of consumer confusion between the counterfeit or unauthorized STACKER 2 and STACKER 3 products and their legitimate counterparts, and likely will continue to cause consumer confusion about these products in the future. *See, e.g.*, *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, (S.D. Ohio 2007). The inadequacy of monetary relief to compensate for these far-reaching harms and deter future trademark infringement also augurs in favor of injunctive relief. *See Gonzales*, 2007 WL 2066363, at *7. By failing to oppose this motion, Defaulting Defendants have not presented any equitable defenses, and this Court suspects that no such defenses are available in

this case. *See id.* Finally, the public interest and the balance of equities weigh in favor of injunctive relief. Defaulting Defendants deliberately infringed NVE's trademarks. Their conduct harms Plaintiff's business reputation and impairs the public interest in preventing consumer confusion and deception in the marketplace. Furthermore, the issuance of an injunction would cause Defaulting Defendants no undue hardship, because "an injunction will merely require Defendant to comply with the . . . Lanham Act." *McGee*, 490 F. Supp. 2d at 883.

Based on these equitable considerations, this Court will grant NVE the injunctive relief it seeks by permanently enjoining Defaulting Defendants from imitating, copying, or making any other infringing use of NVE's registered trademarks.

### V.   Dismissal of Other Defendants

Lastly, the Court notes that NVE has consented to the dismissal without prejudice of co-Defendants Tim Cider, Tiffany King, and Jeff Santiago. (Pl.'s Mot., Guarino Aff. ¶ 11.) Therefore, this Court will dismiss these Defendants from the present suit without prejudice.

### *Conclusion*

For the foregoing reasons, this Court will grant Plaintiff's motion for default judgment in part and award $250,000 in statutory damages under the Lanham Act, as well as prejudgment interest in the amount of $2,347.92. This Court will also permanently enjoin Defaulting Defendants Lisa Calderone, Brandy Copley, and Edward Day from infringing Plaintiff's registered trademarks. Plaintiff will have 30 days to submit descriptive time entries from its billing records and other documentation of its request for reasonable attorneys' fees and costs. Defendants Tim Cider, Tiffany King, and Jeff Santiago will be dismissed from the present suit

without prejudice.  An appropriate form of order accompanies this Memorandum Opinion.


Dated: August 13, 2009

                                                        /s/ Garrett E. Brown, Jr.
                                         GARRETT E. BROWN, JR., U.S.D.J.